PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BARBARA A. MAUK, | ) | |
| | ) | CASE NO. 5:25–CV–00630 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| NATIONSTAR MORTGAGE, LLC | ) | **MEMORANDUM OF OPINION AND** |
| *doing business as Mr. Cooper* | ) | **ORDER** |
| | ) | [Resolving ECF No. 8] |
| Defendant. | ) | |

Before the Court is Defendant's Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c). ECF No. 8. The fully briefed motion is granted in part and denied in part.

## I. INTRODUCTION

### *A. The Facts*

Plaintiff Barbara Mauk owned residential real property at 5458 Dailey Road in Akron, Ohio (the "Home"). ECF No. 1–2 at PageID #: 12. She and her husband, Arthur Hoest, executed a mortgage on the Home in 2006, although Mr. Hoest alone signed the corresponding promissory note. ECF No. 1–2 at PageID #: 25. While the timing is unclear, at some point Defendant Nationstar Mortgage, LLC *(doing business as* Mr. Cooper) began servicing Plaintiff's mortgage. ECF No. 1–2 at PageID #: 13.

After non–payment of the mortgage, Defendant and the primary lender initiated foreclosure proceedings on the Home in the Summit County (Ohio) Court of Common Pleas on June 6, 2023. ECF No. 8 at PageID #: 220; *see U.S. Bank Nat'l Ass'n v. Hoest*, No. CV–2023–06–1879 (Ohio C.P. Summit Cnty. June 6, 2023). Plaintiff was served by publication and did

(5:25–CV–00630)

not appear in those proceedings. ECF 1–2 at PageID #: 13. Mr. Hoest died on September 19, 2023, leaving the Home to Plaintiff alone. ECF No. 11 at PageID #: 243. The Home was sold at auction on March 8, 2024 for $237,500.00. ECF No. 8 at PageID #: 221. On March 11, 2024, Plaintiff exercised her statutory right of redemption and deposited $127,202.20 with the state court, a portion of the requisite redemptive balance. ECF No. 1–2 at PageID #: 14; *see* O.R.C. § 2329.33. Defendant then provided Plaintiff with a payoff quote of $15,339.70 remaining on the account. ECF No. 1 at PageID #: 14.

On April 30, 2024, the state court issued an agreement and entry of redemption requiring Plaintiff to deposit an additional $14,431.85 by May 30, 2024. ECF No. 1 at PageID #: 14. Plaintiff reached out to Defendant and questioned the quoted payoff balance, but later consented and paid both the redemption cost and the remainder of the mortgage. ECF No. 6–6 at PageID #: 135. Plaintiff later moved to vacate the foreclosure sale, claiming she had procured a buyer for the Home. ECF No. 8 at PageID #: 221–22. On July 29, 2024, the state court vacated and dismissed the foreclosure. ECF No. 6–6 at PageID #: 135. On August 27, 2024, Plaintiff mailed Defendant a written notice of error (under 12 C.F.R. § 1024.35) and a request for information (under 12 C.F.R. § 1024.36) contesting the balance she had paid Defendant (the "Letter"). ECF No. 1 at PageID #: 27. On September 2, 2024, Defendant mailed a written notice to Plaintiff confirming her status as a successor–in–interest to the mortgage (the "Notification"). ECF No. 6–1 at PageID #:97. Defendant responded to Plaintiff's Letter on September 3, 2024, iterating its belief in the validity of the balance paid (the "Response.") ECF No. 1 at PageID #: 40.

### B. The Proceedings

Plaintiff filed a complaint in the Summit County Court of Common Pleas on February 19, 2025 alleging that: (1) Defendant made false, misleading, and/or inconsistent statements

2

(5:25–CV–00630)

regarding mortgage fees; (2) Defendant imposed excessive and improper mortgage fees; and (3) Defendant failed to perform a reasonable investigation into alleged payment errors asserted by Plaintiff. ECF No. 11 at PageID #: 248. Plaintiff seeks actual, statutory, and punitive damages, alongside attorneys' fees and associated costs. ECF No. 1–2 at PageID #: 13. Defendant removed the dispute to federal court under 28 U.S.C. § 1331 on March 31, 2025 (ECF No. 1); answered on May 12, 2025 (ECF No. 6); and moved for judgment on the pleadings on July 11, 2025 (ECF No. 8). Plaintiff responded on August 11, 2025 (ECF No. 11) and Defendant replied ten days later (ECF No. 12). In the Complaint, Plaintiff articulates two causes of action:

> **Count 1:** Federal violations of the Real Estate Settlement Procedures Act (RESPA) and Consumer Financial Protection Bureau's (CFPB) Regulation X.
>
> **Count 2:** State violations of Ohio's Residential Mortgage Lending Act (RMLA).

ECF No. 1–2 at PageID ##: 12–13; *see* 12 U.S.C. §§ 2601 *et seq.*; *see* 12 C.F.R. §§ 102.4.1 *et seq.*; *see* Ohio Rev. Code §§ 1332.01 *et seq.*

### C. The Arguments

Defendant seeks judgment on the pleadings under Rule 12(c), arguing that Plaintiff has failed to state a claim upon which relief can be granted because: (1) Plaintiff is neither a borrower under RESPA nor was she a confirmed successor–in–interest when she sent the Letter; (2) the voluntary payment doctrine prevents Plaintiff from recovering corporate advances; (3) Plaintiff's RESPA claims are barred by waiver; (4) Defendant was not required to respond to the Letter, and therefore did not violate RMLA; and (5) Plaintiff waived any right to claim relief under RMLA. ECF No. 8 at PageID ##: 224–30; *see* Fed. R. Civ. P. 12(c).

Plaintiff responds that judgment on the pleadings is inappropriate because: (1) the complaint sufficiently pleads that Defendant violated RESPA; (2) the voluntary payment

3

(5:25–CV–00630)

doctrine does not apply to Plaintiff; (3) Plaintiff's RESPA claims are not barred by waiver; (4) the complaint sufficiently pleads that Defendant violated RMLA; and (5) Plaintiff's RMLA claims are not barred by waiver. ECF No. 11 at PageID ##: 242–49.

Defendant replies that Plaintiff's claims should be dismissed because: (1) Plaintiff was neither confirmed nor treated as a successor–in–interest until after she mailed the Letter; (2) Plaintiff is precluded from making a RMLA claim because she is not a borrower; (3) the voluntary payment doctrine bars Plaintiff's RMLA claim; and (4) the voluntary payment doctrine and waiver are not preempted. ECF No. 12 at PageID ##: 252–62.

## II. Standards[1]

### A. A Rule 12(c) motion is reviewed under the same plausibility standard as Rule 12(b)(6), and therefore may be granted only if no material facts are in dispute and the movant is entitled to judgment as a matter of law.

District courts in the Sixth Circuit review Rule 12(c) motions for judgment on the pleadings using same standard as Rule 12(b)(6) motions for failure to state a claim upon which relief can be granted. See Morgan v. Church's Fried Chicken, 829 F.2d 10, 11 (6th Cir.1987) (noting that where a Rule 12(b)(6) defense is raised by a Rule 12(c) motion, a court must apply the Rule 12(b)(6) standard); see Fed. R. Civ. P. 12(b)(6) and 12(c). Rule 12(c) motions, however, implicate the pleadings themselves, rather than solely the merits of the claims in the complaint. See Roth Steel Prods. v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir.1983); see Fed. R. Civ. P. 12(c).

---

[1] Unless otherwise indicated, case quotations herein omit internal citations, quotations, footnotes, and alterations in order to enhance readability. See, e.g., United States v. Reese, 2024 WL 3913152 (S.D.N.Y. Aug. 23, 2024).

4

(5:25–CV–00630)

To survive judgment on the pleadings, a party must provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (citation modified); see Fed. R. Civ. P. 12(b)(6) and 12(c). Rote contentions and conclusory statements of law are insufficient; the party must allege precise facts from which a court can reasonably infer that a defendant's conduct warrants legal recourse. See Engler v. Arnold, 862 F.3d 571, 575 (6th Cir. 2017) (quoting Iqbal, 556 U.S. at 678).

While a district court "must construe the complaint in the light most favorable to the plaintiff" and "accept all of the complaint's factual allegations as true," the merits of the claims remain as–yet untested in a Rule 12(c) analysis. See Rauch v. Day and Night Mfg. Corp., 576 F.2d 697, 702 (6th Cir.1978); see Fed. R. Civ. P. 12(c). A court must simply "determine whether the plaintiff undoubtedly can prove no set of facts in support of [their] claim that would entitle [them] to relief." Kottmyer v. Maas, 436 F.3d 684, 689 (6th Cir. 2006) (quoting Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 512 (6th Cir. 2001)). Judgment on the pleadings will be granted only if there is no material issue of fact and the movant is entitled to judgment as a matter of law. See Enoch v. Hogan, 728 F. App'x 448, 452 (6th Cir. 2018); see Fed. R. Civ. P. 12(c).

### B. Article III limits federal jurisdiction to cases and controversies, and the doctrine of standing enforces that limitation by requiring plaintiffs to demonstrate a cognizable stake in the dispute.

Article III of the United States Constitution grants federal courts limited jurisdiction over cases and controversies. See U.S. Const. art. III, § 2, cl. 1. To fortify that limitation, the doctrine of standing requires a party seeking federal relief to have "a personal stake in the outcome of the controversy" sufficient to sharpen and invigorate the "illumination of difficult constitutional questions." Baker v. Carr, 369 U.S. 186, 204 (1962); see Lujan v. Defs. of Wildlife, 504 U.S.

5

(5:25–CV–00630)

555 (1992) (noting the Constitution's central mechanism of separation of powers depends on common understanding of what activities are appropriate to the legislature, the executive, and the courts); see Keen v. Helson, 930 F.3d 799, 802 (6th Cir. 2019) (noting that when a plaintiff lacks standing, a federal court lacks jurisdiction); see U.S. Const. art. III, § 2, cl. 1. A plaintiff has standing only when "the interests in the litigation fall within the zone of interests protected by the law invoked." Bank of Am. Corp. v. City of Miami, Fla., 581 U.S. 189, 196 (2017). To apply this zone–of–the–interest test, a district court uses "traditional tools of statutory interpretation to determine whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 126–27 (2014)).

A party invoking federal jurisdiction bears the burden of establishing standing. See Lujan, 504 U.S. at 561. To do so, they must establish: (1) an injury in fact that is concrete, particularized, and actual or imminent; (2) a causal connection between the injury and the defendant's alleged conduct; and (3) that the injury is likely redressable by a favorable decision from the federal court. See id. at 560–61. A district court cannot "speculate concerning the existence of standing or piece together support for the plaintiff." Id. These requirements are not mere pleading requirements, and therefore they "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree required at the successive stages of litigation." Id. at 561.

Related yet separate from a standing analysis, "the absence of a cause of action is a *merits* issue that does not implicate [a] court's constitutional power to decide [a] case." Keen, 930 F.3d at 802 (citing id. at 128 n. 4); see In re Capital Contracting Co., 924 F.3d 890, 893, 895 (6th Cir. 2019). Whether a party has a viable cause of action is therefore a "straightforward question of statutory interpretation." Lexmark, 572 U.S. at 129. A district court need only ask

6

(5:25–CV–00630)

"whether [a party] falls within the class of plaintiffs whom Congress has authorized to sue." *Keen*, 930 F.3d at 802 (quoting *id.* at 127–28). As a result, to bring a viable RESPA claim, Plaintiff must both: (a) establish federal standing; and (b) plead a clear violation of the statute to survive the Rule 12(c) motion. *See Miller v. Bank of New York Mellon*, No. 21–1126, 2021 WL 5702331, *4 (6th Cir. 2021); *see* Fed. R. Civ. P. 12(c).

### III. DISCUSSION

Defendant contends that RESPA is inapplicable because Plaintiff was neither a borrower nor a successor–in–interest when she mailed the Letter to Defendant on August 27, 2024 contesting her past payments. ECF No. 8 at PageID #: 224. Plaintiff counters that RESPA applies because Defendant impliedly confirmed her status as a successor–in–interest months before she sent the Letter. ECF No. 11 at PageID #: 244. Specifically, she alleges that Defendant "failed to perform reasonable investigation into the errors asserted by the [Letter]" by "fail[ing] to act with reasonable skill, care, and diligence, and in good faith and fair dealing." ECF No. 1–2 at PageID ##: 17–21.

### A. It is uncontested that Plaintiff is presently a successor–in–interest, and therefore a borrower, as defined by RESPA and Regulation X.

RESPA was enacted to protect consumers from abusive practices in residential real estate purchases and federal mortgage transactions. *See* 12 U.S.C. §§ 2601 *et seq.*; *see Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 627 (2012). The statute and its administrative implementation, Regulation X, require residential mortgage lenders, servicers, and brokers to disclose, *inter alia*, settlement costs, closing costs, and loan estimates to their borrowers. *See* 12 C.F.R. §§ 102.4.1 *et seq.* The CFPB has maintained regulatory authority over RESPA since the enactment of the Dodd–Frank Act in 2010. *See* 12 U.S.C. §§ 5301 *et seq.* Regulation X authorizes the CFPB to bring enforcement actions for RESPA violations and provides consumers

7

(5:25–CV–00630)

with federal standing to bring civil suits for the same.  See *RESPA Litigation: Key Issues and Considerations*, Practical Law Practice Note W–013–8411.  Under RESPA, however, only *borrowers* have standing to sue in federal court.  See 12 U.S.C. § 2605(f); *see Keen*, 930 F.3d at 802.  While neither RESPA nor Regulation X defines what a borrower is, the Sixth Circuit clarifies it is "someone who is personally obligated on a loan—i.e., someone who is actually borrowing money." *Keen*, 930 F.3d at 800.  Thus, the error remediation procedures in RESPA apply only to *borrowers* and their mortgage servicers.  See 12 C.F.R. § 1024.35(a) ("a servicer shall comply with the requirements of this section for any written notice from the borrower").  Accordingly, a servicer's RESPA duties are triggered only upon receiving a notice of error from a legitimate borrower, whereupon the servicer must either: (a) correct the errors; or (b) conduct a reasonable investigation and provide the borrower with written notification that no errors occurred.  See 12 C.F.R. § 1024.35(e)(1)(A)–(B).  Under the Sixth Circuit's precedential construction in *Keen*, Plaintiff is not a traditional RESPA borrower because she: (a) did not sign the underlying promissory note; and (b) was never personally obligated to the Home's mortgage. ECF No. 1–2 at PageID #: 25; *see* 930 F.3d at 802.

      RESPA's private right of action, however, is not limited only to those bound under a mortgage's promissory note.  See 12 U.S.C. § 2605(j)(3).  In 2018, the CFPB amended Regulation X, expanding the class of protected borrowers to include "successors–in–interest" to mortgaged residential property.  See 81 Fed. Reg. 72160 (Oct. 19, 2016).  A successor–in–interest is:

> [A] person to whom an ownership interest in a property securing a mortgage loan subject to [Regulation X] is transferred from a borrower, provided that the transfer is:
>
> > (1) A transfer by devise, descent, or operation of law on the death of a joint tenant or tenant by the entirety;

8

(5:25–CV–00630)

> (2) A transfer to a relative resulting from the death of a borrower;
>
> (3) A transfer where the spouse or children of the borrower become an owner of the property;
>
> (4) A transfer resulting from a decree of a dissolution of marriage, legal separation agreement, or from an incidental property settlement agreement, by which the spouse of the borrower becomes an owner of the property; or
>
> (5) A transfer into an *inter vivos* trust in which the borrower is and remains a beneficiary and which does not relate to a transfer of rights of occupancy in the property.

12 C.F.R. § 1024.31. From the outset, the CFPB explained its rationale for this expanded coverage:

> Successors in interest are a particularly vulnerable group of consumers, who often must make complex financial decisions with limited information during a period of extreme emotional stress. Successors in interest may be more likely than other homeowners to experience a disruption in household income and therefore may be more likely than other homeowners to need loss mitigation to avoid foreclosure. The [CFPB] therefore concludes that requiring servicers to evaluate a complete loss mitigation application received from a confirmed successor–in–interest under § 1024.41's procedures serves RESPA's consumer protection purposes.

*Amendments to the 2013 Mortgage Rules Under the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z)*, 81 Fed. Reg. 72,160, 72, 177 (Oct. 19, 2016). The relevant portion of the 2018 amendment clarifies that a "confirmed successor–in–interest shall be considered a borrower for purposes of [12 C.F.R. § 1024.17] and this subpart." 12 C.F.R § 1024.30(d). That "subpart" is Subpart C, which includes the mandatory error remediation procedures Plaintiff implicates in her federal claims. ECF No. 1–2 at PageID #: 12; s*ee* 12 C.F.R. § 1024.35. Federal courts have approached this dichotomy between successors–in–interest and borrowers in divergent directions. *Compare Correa v. BAC Home Loans Servicing LP*, 853 F. Supp. 2d 1203 (M.D. Fla. 2012) (holding that a plaintiff who was not

9

(5:25–CV–00630)

a borrower lacked standing to bring action against a mortgagee alleging a RESPA violation) and *Spraggins v. Caliber Home Loans, Inc.*, 2020 WL 8366645 (N.D. Tex. Dec. 31, 2020) (holding that even post–2018 RESPA claims are limited to borrowers who signed a promissory note) *with Faria v. Citizens Bank*, 569 F. Supp. 3d 92 (D .R.I. 2021) (holding that plaintiffs set forth facts to plausibly allege they were considered confirmed successors in interest and thus borrowers entitled to bring claims under RESPA).

As a non–borrower seeking to bring a RESPA cause of action in federal court, Plaintiff must therefore establish that she was a "confirmed successor–in–interest" on or before August 27, 2024 (when she sent the Letter) to survive the instant motion for judgment on the pleadings. *See* 12 C.F.R. § 1024.35; *see* Fed R. Civ P. 12(c).  Plaintiff received a sole individual–ownership interest in the Home when it was transferred to her upon her husband's death.  ECF No. 1–2 at PageID ##: 13–16.  Defendant concedes that Plaintiff achieved successor–in–interest status to the Home on September 2, 2024.  ECF No. 8 at PageID #: 226.  Construing the pleadings in the light most favorable to Plaintiff and accepting her factual allegations as true, the Court concludes that Plaintiff is a successor–in–interest as of September 2, 2024 as defined by Regulation X.  *See* 12 C.F.R. § 1024.31; *see Rauch v. Day and Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir.1978); *see* Fed. R. Civ. P. 12(c).

**B.  But Plaintiff was not a "confirmed" successor–in–interest when she sent the Letter, and therefore she lacks federal standing under RESPA and Regulation X.**

Regulation X requires mortgage servicers to maintain policies and procedures reasonably designed to protect consumers, including: (1) providing borrowers, owners, and assignees with information about their mortgage loans, (2) facilitating communications with potential or confirmed successors in interest upon receiving notice of the death of a borrower, and (3) explaining the intricacies of loss mitigation.  *See* 12 C.F.R. § 1024.38(b); *see, e.g.*, *Shiflett v.*

10

(5:25–CV–00630)

*Lakeview Loan Servicing, LLC*, 2025 WL 603616, at *11 (E.D. Cal., 2025).  To have RESPA standing, however, a party must not just be a successor–in–interest, but a *confirmed* successor–in–interest.  *See* 12 CFR §§ 1024.31 and 1024.30(d).

In plain language, a successor–in–interest is confirmed "once a servicer has confirmed the successor–in–interest's identity and ownership interest in a property that secures a mortgage loan subject to [Regulation X]."  12 C.F.R. § 1024.31; *see Shiflett*, 2025 WL 603616, at *11 n. 4 (noting that "a confirmed successor–in–interest is a party whose identity and ownership interest in the subject property has been confirmed by the loan servicer").  Once a servicer acknowledges a successor's identity and ownership interest in the property securing the loan, the successor is confirmed and obligated to pay the mortgage.  *See, e.g.*, *Walker v. PHH Mortg. Corp.*, 2023 WL 1778514, at *5–*6 (S.D. Fla. Feb. 6, 2023).  RESPA, however, was enacted to "protect consumers from unnecessary fees while purchasing a home."  *Molosky v. Wash. Mut., Inc.*, 664 F.3d 109, 119 (6th Cir. 2011).  Its coverage does not apply to fees related to releasing or redeeming federal mortgages, nor does it "provide potential successors in interest [*e.g.*, Plaintiff herein] a private right of action or a notice of error procedure for claims that a servicer made an inaccurate determination about successorship status or failed to comply with [Regulation X]."  *Amendments to the 2013 Mortgage Rules*, 81 Fed. Reg. at 72, 177;  *see* 12 C.F.R. §§ 1024.36(i) and 1024.38(b)(1)(vi).  Accordingly, a party cannot achieve confirmed successor–in–interest status unless and until they obtain unambiguous validation from their mortgage servicer.

Defendant's September 2, 2024 Notification to Plaintiff states:

> We have received documentation that establishes your status as the confirmed successor–in–interest in the real property securing the [mortgage] account. You are now entitled to request certain information concerning the loan, including payoff information, and make inquiries or complaints related to the servicing of the loan.

11

(5:25–CV–00630)

ECF No. 6–1 at PageID #: 97. Using this language, Defendant posits that Plaintiff lacks standing for any RESPA claims accruing before she was confirmed as a successor–in–interest on September 2, 2024. ECF No. 8 at PageID #: 226. Regulation X is clear: a successor–in–interest achieves confirmed borrower status only when a loan servicer has actively "confirmed their identify and ownership interest" in the implicated residential property. 12 C.F.R. § 1024.31. Such confirmation cannot be implied or inferred; it must be explicitly and unambiguously communicated from the servicer to the party seeking confirmed status. *Cf.* 12 C.F.R. § 1024.31. The pleadings indicate that Defendant did not confirm Plaintiff's successor–in–interest earlier than September 2, 2024.[2] ECF No. 6–1 at PageID #: 97.

Arguing against this, Plaintiff contends that the Notification "does not state when [Plaintiff] was confirmed successor–in–interest in the Home." ECF No. 11 at PageID #: 243. Rather, she claims that: (1) the state court foreclosure proceedings (ECF No. 6–4); and (2) the September 3, 2024 Response from Defendant (ECF No. 1–2 at PageID ##: 31–33) must be construed liberally and holistically as evidence that she was confirmed as a successor–in–interest before the September 2, 2024 Notification. ECF No. 11 at PageID #: 243. This argument is unpersuasive; Plaintiff has neither sufficiently alleged facts nor adequately provided law showing why Defendant's silence should constitute tacit approval of confirmed successor–in–

---

[2] The sentence "[w]e have received documentation that establishes your status as the confirmed successor–in–interest" demonstrates contingency (*i.e.*, that confirmation of Plaintiff's successor status was conditioned on documentary verification). ECF No. 6–1 at PageID #: 97. The sentence "[y]ou are now entitled to request certain information concerning the loan" demonstrates temporality (*i.e.*, that *now*, as of September 2, 2024— and not before—Plaintiff is legally entitled to request information under the mortgage). ECF No. 6–1 at PageID #: 97.

12

(5:25–CV–00630)

interest status before the September 2, 2024 Notification.  See *Carey Est. of Carey v. KeyBank, N.A.*, 2024 WL 3554946, at *5 (N.D. Ohio, 2024).

      First, "a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Fed R. Civ. P. 10(c).  The September 2, 2024 Notification contains the only precise, ascertainable date of successor–in–interest confirmation in the pleadings, in accord with the regulatory language placing the onus of confirmation on Defendant alone (*i.e.*, "once a *servicer* has confirmed" successor–in–interest status).  ECF No. 6–1 at PageID #: 97; 12 C.F.R. § 1024.31 (emphasis added); *see Shiflett*, 2025 WL 603616, at *10 n. 11 (acknowledging that "RESPA [requires] servicers to provide information to confirmed successors in interest" and that "confirming the status of a successor in interest is [the] servicer's duty.")  The Notification is thus sufficient (as the only clear evidence in the pleadings) to demonstrate that Plaintiff became a confirmed successor–in–interest no earlier than September 2, 2024.  ECF No. 6–1 at PageID #: 97.

      Second, Plaintiff offers no ascertainable date or event–based triggers as workable proposals to demarcate her confirmed successor–in–interest status.  ECF Nos. 1 and 11.  Rather, she alleges that "[Defendant's] actions suggest that [it] confirmed [Plaintiff] as a successor–in–interest months before it received the [Letter,]" which she asserts is "a disputed factual issue best left for discussion at the summary judgment stage or trial."  ECF No. 11 at PageID #: 244.  Although Plaintiff need only allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" to survive a Rule 12(c) motion, the Court declines to conjure an apparitional date on which successor status may theoretically have been confirmed, especially when a clear date is easily discernible from the pleadings in harmony with the regulatory text.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see* Fed R. Civ. P. 12(c); *see* 12 C.F.R. § 1024.31.

(5:25–CV–00630)

Applying Plaintiff's proposed subjective methodology would require inefficient investigation and inconsistent statutory application across federal courts, rather than a bright–line approach that can provide, in most cases, a clear and demonstrable date for successor–in–interest confirmation and its resulting conferral of RESPA standing.

Only a borrower may bring a RESPA claim in federal court. *See* 12 U.S.C. § 2605(f). Until a party is a confirmed successor–in–interest, they are not a borrower. *See Keen*, 930 F.3d at 802 (noting that "signing a mortgage, or owning a home subject to one, does not make you a borrower." The Court "cannot extend RESPA's cause of action any broader than Congress did," and therefore declines to expand the statute's coverage to unconfirmed successors–in–interest. *Id.*; *see Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001). Plaintiff was neither a borrower nor a confirmed successor–in–interest before receiving the September 2, 2024 Notification. ECF No. 6–1 at PageID #: 97. As such, she does not have a cause of action under RESPA for her past payment inquiries in the August 27, 2024 Letter. ECF No. 1 at PageID #: 27; *see Sharp v. Deutsche Bank Nat'l Tr.*, No. 2015 WL 4771291, at *7 (D. N.H. Aug. 11, 2015) (noting that an unconfirmed successor in interest is not a borrower for purposes of Regulation X); *see Parsley v. Rushmore Loan Mgmt. Services LLC*, 2024 WL 712873, at *5–6 (S.D. W. Va. Feb. 21, 2024) (dismissing a RESPA claim because a plaintiff failed to allege she was either a borrower or a confirmed successor in interest).

Although the Sixth Circuit has not directly addressed this issue, the Court concludes that a written and dated communication from a loan servicer, with explicit language therein, suffices to establish a presumptive date of successor–in–interest confirmation and standing to seek RESPA relief in federal court. That writing must include, at a minimum, (1) language affirming a party's status as a confirmed successor–in–interest; (2) clear identification of the real property

14

(5:25–CV–00630)

to which a party has succeeded; (3) the effective date of the confirmation status; and (4) all statutory rights that emanate therefrom.[3] Because Plaintiff was not a confirmed successor–in–interest before the Notification, she has no RESPA standing for causes of action accruing before September 2, 2024, including the past–payment claims in the August 27, 2024 Letter. The Court therefore declines to assess the Parties' contentions under the dual doctrines of voluntary payment and rights–waiver, as those issues are moot absent federal standing.

### C. Because Plaintiff's federal law claims lack of standing, the Court declines to exercise supplemental jurisdiction over her remaining state law claims under RMLA.

Without standing for her federal claims, Plaintiff's remaining causes of action arise purely under state law *via* the Ohio RMLA. *See* O.R.C. § 1332.01 *et seq.* The Sixth Circuit holds—under 28 U.S.C. § 1367(c)(3)—that "[a] district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. If the federal claims are dismissed before trial, the state claims generally should be dismissed as well." *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (quoting *Wojnicz v. Davis,* 80 Fed. App'x 382, 384–85 (6th Cir. 2003)); *see Experimental Holdings, Inc. v. Farris,* 503 F.3d 514, 521 (6th Cir. 2007) (noting that "once a federal court has dismissed a plaintiff's federal law claim[s], it should not reach state law claims"); *see Musson Theatrical, Inc. v. Fed*

---

[3] To avoid lengthy delays and protect consumers from corporate gamesmanship (*e.g.*, intentional delaying of confirming successor–in–interest status), Regulation X commands that a servicer must "promptly identify and facilitate communication with the borrower's successor–in–interest concerning the secured property" upon learning of the original borrower's death. 12 C.F.R. § 1024.38. The Court declines to determine what constitutes "prompt" identification or communication because: (a) there is nothing in the pleadings alleging Defendant intentionally or negligently delayed confirming Plaintiff's successor status as an end–around to avoid RESPA liability; and (b) the pleadings do not clearly indicate when Defendant became aware of Mr. Hoest's death.

15

(5:25–CV–00630)

*Exp. Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996) (noting that "after a [Rule] 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims").

Because the Court grants judgment for Defendant on Plaintiff's federal claims for want of standing, it no longer has original jurisdiction to adjudicate this dispute. Accordingly, it declines to exercise supplemental jurisdiction over Plaintiff's remaining state claims under RMLA. Accordingly, Plaintiff must vindicate those state rights in state court under state law. *See Keen*, 930 F.3d at 800.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings (ECF No. 8) is granted in part and denied in part. The Court dismisses Plaintiff's federal claims under 12 U.S.C. §§ 2601 *et seq.* of the Real Estate Settlement Procedures Act ("RESPA") and Consumer Financial Protection Bureau 12 C.F.R. §§ 102.4.1 *et seq.* ("Regulation X") for lack of standing. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims under O.R.C. §§ 1332.01 *et seq.* of the Ohio Residential Mortgage Lending Act ("RMLA"). Accordingly, those claims shall be remanded to the Summit County Court of Common Pleas. A separate Judgment Entry and Order of Remand shall issue.

IT IS SO ORDERED.

| | |
|---|---|
| October 31, 2025 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |